**SACK & SACK, LLP**
**70 East 55th Street, 10th Floor**
**New York, New York 10022**
**Tel.: (212) 702-9000**
**Attorneys for Plaintiff, Francis Cuello**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

| | |
|---|---|
| **FRANCIS CUELLO**, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| **GUARANTEED RATE, INC.**, | : |
| | : |
| Defendant. | : |
| | : |

------------------------------------------------------------X

**Case No.   –cv--2016**

**COMPLAINT**

**JURY TRIAL REQUESTED**

    Plaintiff Francis Cuello ("*Cuello*" or "*Plaintiff*"), by her attorneys, Sack & Sack, LLP, as and for her Complaint against Guaranteed Rate, Inc. ("*Guaranteed Rate*", "*GRI*", or "*Defendant*"), alleges as follows:

## NATURE OF THE CLAIMS

    1.    Plaintiff complains that Defendant engaged in the unlawful discrimination and subsequent retaliation of Plaintiff in the terms, conditions, and privileges of her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e ("*Title VII*") based upon her gender, female.

    2.    Plaintiff further complains of gender discrimination, in violation of New York State Human Rights Law, Executive Law § 290 et seq. (the "*NYSHRL*"); and the Administrative Code of the City of New York § 8-101 et seq. (the "*NYCHRL*").  The claims made herein are based upon Defendant's unlawful discrimination, in violation of Plaintiff's civil rights in the terms, conditions and privileges of employment, based upon her gender, female.

1

3.      Plaintiff further complains that Defendant engaged in extraordinarily severe hostile work environment sexual harassment against Plaintiff that altered the conditions of her working environment, unreasonably interfered with her work performance and ultimately led to her termination.

4.      Plaintiff complains that her former employer engaged in retaliation for having complained of discrimination that resulted in her termination in violation of Title VII, NYSHRL, and NYCHRL.

5.      Plaintiff files this action to seek monetary relief for the denial of equal employment opportunity and for the unlawful employment practices of Defendant.

6.      Plaintiff further complains that she has suffered, is suffering and will continue to suffer severe economic and non-economic damages because Defendant deprived Plaintiff of her employment rights in violation of federal, state, and city law.

7.      On or about October 27, 2015, Plaintiff filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("*EEOC*"), charge number 846-2016-34205.

8.      Plaintiff timely brings this action within ninety (90) days of the receipt of a Notice of Right to Sue Letter, issued by the EEOC on or around May 24, 2016.

## PARTIES

9.      Plaintiff resides at 133 Pitt Street, Apartment #420, in the County, City and State of New York, where she was employed by Defendant, Guaranteed Rate Inc., as an Operations Assistant.

10.     GRI is a correspondent mortgage lender engaged in the mortgage banking industry.  GRI is a Delaware corporation in the business of originating mortgage loans and

selling those loans on the secondary market to investor banks.

11.     Guaranteed Rate, Inc. is headquartered in Chicago, IL at 3940 N. Ravenswood and has approximately 200 offices nationwide as well as 2,000 employees.  GRI operates in the State of New York, where it employs approximately 50 employees in approximately five (5) locations.  Defendant's New York office is located at 750 Lexington Avenue, New York, New York 10022.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).  Venue in this matter is properly laid in the District because the violations of the Plaintiff's federal, state, and city civil rights occurred at branch office locations in this District, because the Defendant does business in this District, and because most of the fact witnesses and evidence are common to or most convenient to this District.

## FACTS COMMON TO ALL COUNTS[1]
### EMPLOYMENT BACKGROUND

14.     From December 17, 2012 until July 24, 2015, Cuello was employed by Defendant, Guaranteed Rate Inc., as an Operations Assistant.

15.     As an Operations Assistant, Plaintiff supported GRI's Mortgage Consultants and Loan Coordinators.  Cuello was responsible for working on loan files; uploading and completing employment verifications; running Data Verify, USPS, and Floodcerts; obtaining updated

---

[1] All directly quoted statements, unless otherwise specified, are the sum and substance of such statements as recalled by Plaintiff.

Homeowners Insurance, Payoffs, and Mortgage verifications; and other administrative duties, which included, but were not limited to, covering the reception area, answering phones, greeting clients, and making copies of documents.

16.     Throughout Plaintiff's tenure at Defendant, she was a loyal, hard-working employee.  She was always on time, never received a complaint, and happily took upon herself additional responsibilities without any additional pay.  Plaintiff was always cordial, respectful, responsible, and eager to learn and grow within the company.

17.     At all relevant times herein, Plaintiff reported to Tom Sculco ("*Sculco*"), the Operations Manager in the New York Office.

18.     Mr. Sculco was responsible for the hiring, firing, and supervision of all employees within the Operations department.

## CHARGING PARTY SUFFERS SEXUAL HARASSMENT
### MR. KESHINOVER ENGAGES IN UNWARRANTED AND UNWELCOMED TOUCHING

19.     In June 2015, while Plaintiff was out of the office during a regularly scheduled vacation, Defendant hired Yardley Keshinover ("*Keshinover*" or "*Mr. Keshinover*") into the Operations Department in the New York Office.

20.     Mr. Keshinover, a male, was "recruited" by another employee, who is also his aunt, Mindy Hausman ("*Hausman*"), a high-ranking loan officer in the New York Office.

21.     Mr. Keshinover is a 24-year-old muscular man who stands at 5'5", weighs about 150 pounds, has dark hair, and has Dominican and Russian roots.

22.     Mr. Keshinover was hired as an Operations Associate, into the same department as Plaintiff, and thus also reported to Mr. Sculco.

23.     On Monday, June 8, 2015, immediately upon Plaintiff's return from vacation, and on her first day working with the newly hired Mr. Keshinover, Plaintiff was immediately

subjected to conduct that was offensive, unwarranted, unwelcomed, harassing and threatening.

24.     Specifically, Plaintiff was sitting at her seat reading an email when Mr. Keshinover approached her, poked Plaintiff's back, and put his arm around Plaintiff without her consent.  This made Plaintiff feel very uncomfortable.

25.     Keshinover then put his face right next to Plaintiff and tried asking her a question. Plaintiff felt disgusted.  No person had ever gotten that close to her physically in the workplace. Plaintiff pushed Keshinover away and clearly and unequivocally told him to never touch her again.

26.     At that time, Plaintiff also told Keshinover never to step inside her desk area, and said that if he needed to speak with her, he could do so from outside her cubicle.

27.     In response to Plaintiff's serious request not to be further harassed, Mr. Keshinover laughed loudly and then asked Plaintiff an innocuous work-related question to feign purpose for his inappropriate conduct and intrusion.

28.     Despite Plaintiff's prior conversation with Mr. Keshinover, later that same day, Mr. Keshinover began throwing paper balls at Plaintiff's desk.  While he was throwing paper balls at her, Mr. Keshinover asked Plaintiff why she was being so quiet.  Plaintiff felt very uncomfortable, threatened and nervous.  Plaintiff knew Keshinover was trying to elicit a reaction from her.  Plaintiff also knew that if she were a man, Keshinover would not be engaging in this harassing conduct towards her.

29.     Mr. Keshinover persistently asked Plaintiff personal questions such as whether Plaintiff had a boyfriend or if Plaintiff could give him her phone number.  Plaintiff did not want to give him the satisfaction of a response and continued to ignore him while trying to do her work.

30.     Despite Plaintiff's efforts to get Mr. Keshinover to leave her alone, Mr. Keshinover continued to taunt Plaintiff, saying disgusting things like, **"Your boyfriend probably doesn't sexually satisfy you enough and that is why you are so uptight."**

31.     Mr. Keshinover's unwelcomed comments and behavior, which were witnessed by other members of the Operations Department, irritated Plaintiff and made Plaintiff feel humiliated and sick to her stomach.

32.     Instead of engaging in legitimate business and work-related activities, Mr. Keshinover was consuming Plaintiff's time asking her irrelevant questions as a harassing attempt to try to flirt with Plaintiff and disrespect and humiliate her while encroaching on Plaintiff's personal space in an inappropriate, offensive and threatening manner at the workplace. Additionally, Mr. Keshinover's licentious and insensitive remarks and actions directed towards Plaintiff created a hostile and abusive workplace environment.

### MR. KESHINOVER CONTINUES TO ENGAGE IN INAPPROPRIATE BEHAVIOR

33.     Within days, Mr. Keshinover escalated his already inappropriate egregious conduct on a account of her gender.

34.     For example, Mr. Keshinover engaged in an offensive and inappropriate conversation with another coworker in the vicinity of Plaintiff's cubicle.  He was speaking to his coworker about having sex with various women and graphically describing their private parts. This all occurred in Plaintiff's immediate vicinity.  Mr. Keshinover then directed his comments towards Plaintiff, telling the coworker, **"I will do anything to get that pu**y."**

35.     Mr. Keshinover's deliberate act of turning towards Plaintiff before discussing his commitment to achieve a sexual pleasure illustrates that his sexual harassment of Plaintiff was due to her gender.

**REPEATED INSTANCES OF SEXUAL HARASSMENT**

36.     From June 8, 2015 until July 10, 2015, in a span of what seemed to last forever, Mr. Keshinover constantly stalked Plaintiff around the workplace, attempted to flirt with her and inappropriately touch her, threw objects at her desk, asked her on dates, looked over her shoulder at her cubicle, poked her, made sexually aggressive jokes to her and about her with other employees, and touched her inappropriately without her consent while he asked questions, such as whether she was being satisfied sexually or whether she was uptight because she wasn't having enough sex. Mr. Keshinover would not stop bothering and harassing Plaintiff and making her feel uncomfortable in the workplace, despite Plaintiff's clear repeated requests for him to do so.

37.     Mr. Keshinover also made inappropriate comments about Plaintiff's appearance, including her legs, her hair, and her private parts.

**PLAINTIFF REPORTS MR. KESHINOVER'S SEXAULLY HARRASSING CONDUCT**

38.     After a few weeks of being harassed by Mr. Keshinover, Plaintiff became increasingly anxious and stressed at work.  She began losing sleep and her appetite and would be afraid to use the bathroom at work for fear of having to interact with Keshinover.

39.     To remedy the harassing behavior, Plaintiff initially reached out to Stephanie Melo ("*Melo*") of Human Resources, who suggested that Plaintiff should first speak to her manager.

**JULY 9, 2015 – MEETING WITH MR. SCULCO**

40.     On the afternoon of July 9, 2015, Plaintiff emailed Plaintiff's supervisor, Tom Sculco, complaining that she was being subjected to an unlawful, offensive, hostile work environment.

41.     Specifically, Plaintiff informed Mr. Sculco that the new employee, Mr. Keshinover, had been making her feel uncomfortable and that she requested a seat change away from Mr. Keshinover.

42.     Mr. Sculco admittedly did not immediately communicate the issues raised to Human Resources after speaking with Plaintiff.

43.     Later in the day, after not hearing from Mr. Sculco, Plaintiff followed up on her email with a conversation with Mr. Sculco detailing Mr. Keshinover's unlawful behavior. Mr. Sculco responded by agreeing that Mr. Keshinover's behavior was inappropriate and unacceptable and was grounds for immediate termination.

44.     Mr. Sculco asked Plaintiff what he could do to stop the harassment and remedy the situation without having to terminate Keshinover.  Plaintiff responded by telling him that Plaintiff would just prefer to have her seat location changed so that she would no longer be subjected to Mr. Keshinover's constant and repeated inappropriate comments, offensive language, and threatening contact.

45.     Mr. Sculco then asked whether he should speak with Mr. Keshinover, to which Plaintiff replied that that was not yet necessary in the hopes that a seat change was enough to remedy the situation.  Plaintiff told her boss that the whole situation made her uncomfortable and that she just wanted her seat to be moved and to move on.

46.     Plaintiff told Mr. Sculco that complaints would escalate if a seat change would

not remedy the situation.

47.     Mr. Sculco admitted to Plaintiff that he believed Mr. Keshinover's behavior was inappropriate and unlawful and was grounds to have him fired.  Plaintiff told Mr. Sculco that she wanted nothing to do with Mr. Keshinover and that, for now, she just wanted her seat moved.

48.     In order to resolve Plaintiff's complaints of harassment, Mr. Sculco agreed to move Plaintiff's seat, assign Plaintiff a new position, and raise Plaintiff's salary by $3,000 per year.  (Plaintiff had already taken on additional responsibilities in the past few months and the salary raise was justifiable.)   Plaintiff told Mr. Sculco that this proposal was an acceptable resolution to Plaintiff's complaints of sexual harassment.

49.     Mr. Sculco told Plaintiff that if Plaintiff had any other complaints, Plaintiff should immediately let him know at any time.

50.     Plaintiff thanked Mr. Sculco for his assistance and understanding, returned to her seat, and began packing her things in anticipation of a seat change away from Mr. Keshinover.

51.     Once her seat was changed, Plaintiff informed Ms. Melo that she believed that Mr. Sculco had resolved the issue of harassment.

### DEFENDANT RETALIATES AGAINST PLAINTIFF FOR HER SEXUAL HARASSMENT COMPLAINTS

52.     About two weeks after Plaintiff's seat was changed, Plaintiff received a call *out of the blue* from Defendant's Human Resources manager, Maria Fauci ("*Fauci*"), summoning Plaintiff to her office.

53.     There, Ms. Fauci asked Plaintiff about Plaintiff's complaints of harassment concerning Mr. Keshinover.

54.     Plaintiff told Ms. Fauci about Mr. Keshinover's conduct, her requests for him to stop and her complaints to her supervisor, Mr. Sculco.

55.     To Plaintiff's shock and dismay, during the conversation, instead of discussing Mr. Keshinover's outrageous and inappropriate conduct, Ms. Fauci began lecturing Plaintiff about her actions, stating that it was "wrong" for her to approach Mr. Sculco about Mr. Keshinover's behavior, rather than directly her.

56.     Plaintiff told Ms. Fauci that she did not want to further escalate any incidences or complaints concerning Mr. Keshinover since her manager had been able to resolve them internally and to Plaintiff's satisfaction.

57.     Ms. Fauci told Plaintiff that if she wanted to **"press any more charges,"** Plaintiff should tell her so there could be a more formal meeting.

58.     Plaintiff informed Ms. Fauci that once her seat location was changed, the harassing conduct ceased as well, but that if matters should escalate, Plaintiff would adhere to her suggestions.   However, at that point, Plaintiff told Ms. Fauci that since it appeared that Plaintiff's manager remedied Plaintiff's concerns, no further action was necessary.

59.     Ms. Fauci inexplicably responded that she did not **"believe"** her.   Plaintiff answered Ms. Fauci that she could verify these facts by speaking with Plaintiff's manager and coworkers who were aware of and witnessed Mr. Keshinover's unlawful behavior.

60.     Rather than verify Plaintiff's complaints of harassment against Mr. Keshinover, Ms. Fauci turned the tables on Plaintiff and baselessly stated that she heard that Plaintiff was toxic to the Guaranteed Rate work environment and that Plaintiff did not belong there.

61.     Ms. Fauci concluded the meeting by instructing Plaintiff to write an email to her telling her that Plaintiff's complaints of harassment have been resolved.

### JULY 24, 2015 – SECOND MEETING WITH MS. FAUCI

62.     On the afternoon of Friday, July 24, 2015, Ms. Fauci again summoned Plaintiff to

her office.  This time, Plaintiff was confronted by Ms. Fauci and Laura Legler ("*Legler*"),
Defendant's Director of Human Resources, who had just flown in from Chicago.

63.     At first Plaintiff thought Ms. Fauci wanted to further discuss Plaintiff's
complaints concerning Mr. Keshinover.  Plaintiff repeated that her complaints had been made to
Plaintiff's manager and resolved quickly to Plaintiff's satisfaction. Ms. Fauci responded again
that she did not believe Plaintiff's story.  Then, instead of discussing Plaintiff's allegations or
conducting any sort of investigation, Ms. Fauci simply said that Plaintiff "did not belong at the
company."

64.     Ms. Legler, whom Plaintiff had never met before, then accused Plaintiff of
gossiping about an employee.  She added that an investigation took place and that Plaintiff had
falsely accused Mr. Keshinover of sexual harassment.   Plaintiff continued to tell Human
Resources everything Mr. Keshinover had done to create a hostile work environment by
repeatedly making Plaintiff feel uncomfortable, violated and angry. The Human Resources
professionals were both inexplicably yelling at Plaintiff, and seemed to have choreographed their
responses.

65.     Then, to Plaintiff's shock and horror, without any warning or consent, they
invited Mr. Keshinover into the meeting and asked him questions.  This, of course, made no
sense, since just moments earlier, they told Plaintiff they had *already* conducted an investigation.
Mr. Keshinover, of course, denied every instance of sexual harassment.

66.     Not only was Mr. Keshinover's presence in the meeting unnecessary and
unprofessional, but it also created a tense and uncomfortable environment for Plaintiff.

67.     It was apparent throughout the meeting that human resources chose to side with
Mr. Keshinover based upon his "contacts" within the company rather than lend any credence to

Plaintiff's complaint.

68.     At the conclusion of the meeting, Human Resources terminated Plaintiff's employment for making a false sexual harassment complaint.

69.     On Tuesday, July 28, 2015, Plaintiff emailed Victor Ciardelli ("*Ciardelli*"), Defendant's Chief Executive Officer, recounting the bizarre events surrounding her discussion with Human Resources and their subsequent retaliation.  Laura Legler responded to Plaintiff's email with an extremely defensive reply.

70.     On the same day, July 28, 2015, Plaintiff received correspondence from Richard J. Cunningham, Esq., a lawyer for Defendant.  This correspondence was, for the most part, a critique of Plaintiff's email to Mr. Ciardelli, rather than a substantive response to the underlying facts surrounding Plaintiff's allegations.

### POST-EMPLOYMENT

71.     Plaintiff was terminated from Guaranteed Rate in unlawful retaliation for Plaintiff's lawful complaints of sexual harassment.

72.     No serious investigation, if any investigation at all, was ever undertaken by Defendant into Plaintiff's lawful complaints to her supervisor (and subsequently to Human Resources), and no discipline was ever meted out with respect to the sexual misconduct and abuse Plaintiff complained of while she was employed at Defendant.

73.     Defendant cannot articulate any legitimate reason or justification for the termination of Plaintiff's employment.

74.     The pretextual actions Defendant undertook against Plaintiff were in retaliation for Plaintiff having asserted her rights as protected by Federal, State and City laws against discrimination and retaliation.

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### (Discrimination – TITLE VII)

75.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

76.     Defendant has discriminated against Plaintiff in terms of conditions of her employment on the basis of her gender, in violation of Title VII.

77.     As a result of the Defendant's wrongful actions complained of herein, Plaintiff has suffered monetary damages and damages for mental anguish in the form of humiliation, embarrassment, emotional distress and physical injury.

78.     All of the foregoing damages have been exacerbated by the latest events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment and unlawful termination from her employment.

### SECOND CLAIM FOR RELIEF
### (Discrimination in Violation of the NYSHRL)

79.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

80.     Defendant has discriminated against Plaintiff in terms of conditions of her employment on the basis of her gender, in violation of Section 296 of the NYSHRL.

81.     As a result of the Defendant's wrongful actions complained of herein, Plaintiff has suffered monetary damages and damages for mental anguish in the form of humiliation, embarrassment, emotional distress and physical injury.

## THIRD CLAIM FOR RELIEF
### (Discrimination - NYCHRL)

82.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

83.    Defendant has discriminated against Plaintiff in terms of conditions of her employment on the basis of her gender, in violation of Section 8-107 of the NYCHRL.

84.    As a result of the Defendant's wrongful actions complained of herein, Plaintiff has suffered monetary damages and damages for mental anguish in the form of humiliation, embarrassment, emotional distress and physical injury.

## FOURTH CLAIM FOR RELIEF
### (Hostile Work Environment)

85.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

86.    Defendant created a work environment because of Plaintiff's gender that was objectively offensive and unwelcome and that was frequently permeated with discriminatory intimidation, ridicule, and insult that was objectively severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

87.    As a result of the Defendant's wrongful actions complained of herein, Plaintiff has suffered monetary damages and damages for mental anguish in the form of humiliation, embarrassment, emotional distress and physical injury.

## FIFTH CLAIM FOR RELIEF
### (Hostile Work Environment Sexual Harassment Under
### New York State Human Rights Law §296(1)(A))

88.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

89.     Based upon the aforementioned facts, Plaintiff was subjected to discriminatory actions as described herein.

90.     Defendant's knowledge, tolerance and acquiescence of a sexually charged hostile work environment suffered by Plaintiff, is impermissible sex based discrimination.

91.     Defendant allowed to exist an offensive, discriminatory, and hostile work environment where a constant barrage of discriminatory actions as described herein, which is particularly offensive and directed towards Plaintiff based upon her gender.

92.     Defendant did not follow policies in dealing with a sexually hostile work environment.

93.     Defendant failed to take reasonable steps to stop the harassment complained of herein.

94.     Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

95.     The aforementioned acts of Defendant constitute unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her gender and in retaliation against her in violation of the provisions of the NYSHRL § 296(1)(a).

96.     As a proximate result of Defendant's aforementioned hostile work environment sexual harassment against Plaintiff, Plaintiff has and will continue to suffer substantial losses,

including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

97.     As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

98.     As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

99.     As a result of the foregoing, Plaintiff is entitled to recover from Defendants, jointly and severally, an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

100.     As a result of the foregoing acts, Plaintiff is entitled to recover compensatory damages from Defendants, jointly and severally, in addition to all other amounts sought herein.

101.     In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages to adequately punish Defendants, jointly and severally, and to deter Defendant from continuing and repeating such conduct in the future.

## SIXTH CLAIM FOR RELIEF
### (Hostile Work Environment Sexual Harassment Under
### New York City Human Rights Law § 8-107)

102.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

103.    Based upon the aforementioned facts, Plaintiff was forced to engage in and be subjected to discriminatory actions as described herein by Defendant in exchange for her continued employment and advancement at Defendant's workplace.

104.    Defendant's knowledge, tolerance and acquiescence of a sexually charged hostile work environment suffered by Plaintiff, is impermissible sex based discrimination.

105.    Defendant allowed to exist an offensive, discriminatory, and hostile work environment as described herein, which is particularly offensive and directed towards Plaintiff.

106.    Defendant did not have policies in place to deal with a sexually hostile work environment.

107.    Defendant failed to take reasonable steps to stop the harassment complained of herein.

108.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

109.    The aforementioned acts of Defendant constitute unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her gender in violation of the provisions of the NYCHRL § 8-107.

110.    As a proximate result of Defendant's aforementioned hostile work environment sexual harassment against Plaintiff, Plaintiff has and will continue to suffer substantial losses,

including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

111.    As a further proximate result of Defendant's actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

112.    As a further proximate result of Defendant's actions taken because of Plaintiff's sex, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

113.    As a result of the foregoing, Plaintiff is entitled to recover from Defendants, jointly and severally, an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

114.    As a result of the foregoing acts, Plaintiff is entitled to recover compensatory damages from Defendants, jointly and severally, in addition to all other amounts sought herein.

115.    In committing the acts alleged herein, Defendant acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages to adequately punish Defendants, jointly and severally, and to deter Defendant from continuing and repeating such conduct in the future.

### SEVENTH CLAIM FOR RELIEF
#### (Retaliation – TITLE VII)

117.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

118.    Defendant has retaliated against Plaintiff for having complained of gender discrimination and/or sexual harassment in the terms and conditions of employment in violation of Section 704 of Title VII (42 U.S.C. § 2000e-3).

119.    Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of gender discrimination to Defendant.

120.    Defendant had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of gender discrimination to Defendant.

121.    As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of gender discrimination to Defendant, Defendant engaged in adverse treatment of Plaintiff, including, *inter alia*, terminating her employment.

122.    As a result of the Defendant's wrongful actions complained of herein, Plaintiff has suffered monetary damages and damages for mental anguish in the form of humiliation, embarrassment, emotional distress and physical injury.

123.    All of these damages have been exacerbated by the events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment, and unlawful termination of employment.

### EIGHTH CLAIM FOR RELIEF
**(Retaliation - NYSHRL)**

124.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

125.    Defendant has retaliated against Plaintiff for having complained of gender discrimination in the terms and conditions of employment in violation of Section 296 (7) of the NYSHRL.

126.    Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of gender discrimination to Defendant.

127.    Defendant had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of gender discrimination to Defendant.

128.    As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of gender discrimination to Defendant, Defendant engaged in adverse treatment of Plaintiff, including, *inter alia*, terminating her employment.

129.    As a result of the Defendant's wrongful actions complained of herein, Plaintiff has suffered monetary damages and damages for mental anguish in the form of humiliation, embarrassment, emotional distress and physical injury.

130.    All of these damages have been exacerbated by the events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment and unlawful termination of employment.

**NINTH CLAIM FOR RELIEF**
**(Retaliation - NYCHRL)**

131.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

132.    Defendant has retaliated against Plaintiff for having complained of gender discrimination in the terms and conditions of employment in violation of Section 8-107(7) of the NYCHRL.

133.    Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of gender discrimination to Defendant.

134.    Defendant had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of gender discrimination to Defendant.

135.     As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of gender discrimination to Defendant, Defendant engaged in adverse treatment of Plaintiff, including, *inter alia*, terminating her employment.

136.     As a result of the Defendant's wrongful actions complained of herein, Plaintiff has suffered monetary damages and damages for mental anguish in the form of humiliation, embarrassment, emotional distress and physical injury.

137.     All of these damages have been exacerbated by the events surrounding Plaintiff's most recent discrimination, retaliation, hostile environment and unlawful termination of employment.

## PUNITIVE DAMAGES – BAD FAITH

138.     It is presumed that parties to contracts undertake their respective obligations in good faith, with intent to deal fairly.   In light of Defendant's obvious and blatant bad faith, wrongdoing and breach of other duties, ***punitive damages*** should be assessed against Defendant so that it be deterred from attempting such harmful employment practices in the future.

*[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court order the following relief in favor of Plaintiff:

I.     A Declaratory Judgment declaring that the actions, conduct, and practices of Defendant complained of herein violate the Federal law, as well as the laws of the State of New York and the City of New York.

II.     A judgment granting equitable relief directing Defendant to cease and desist from exposing Plaintiff to discrimination and retaliation;

III.     A judgment directing Defendant to reimburse and make Plaintiff whole for any and all earnings, including front pay, back pay, bonus payments, she would have received but for Defendant's discriminatory treatment and unlawful dismissal, including but not limited to, back pay, contractual damages, emotional pain and suffering, and pension benefits;

IV.     A judgment awarding Plaintiff compensatory damages for mental anguish, loss of dignity, humiliation, and injury to livelihood in an amount that is fair, just, and reasonable, to be determined at trial, including reasonable attorneys' fees, as provided under applicable law.

V.     A judgment awarding Plaintiff punitive damages;

VI.     An award of prejudgment interest, costs and attorney's fees; and

VII.     Such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable by jury in this action.


Dated:  New York, New York
        August 23, 2016

                        Respectfully submitted,

                        **SACK & SACK, LLP**

                            */s/ Jonathan Sack*
                        By_____
                            Jonathan Sack, Esq.

                        **Attorneys for Plaintiff**
                        70 East 55th Street, 10th Floor
                        New York, New York 10022
                        Tel.: (212) 702-9000
                        Fax: (212) 702-9702